MUSKEGON BUILDING AND CONSTRUCTION TRADES v
MUSKEGON AREA INTERMEDIATE SCHOOL DISTRICT

Docket No. 67497. Submitted June 7, 1983, at Grand Rapids.—Decided November 8, 1983. Leave to appeal applied for.

The Muskegon Area Intermediate School District purchased a school to be used as a special education facility. A portion of the purchase price was received from the state. The school district then began to solicit bids for additions to, and the remodeling of, the school. The bid specifications for the project did not include provisions for the payment of wages and fringe benefits at the prevailing rates. The Muskegon Building and Construction Trades, a labor organization consisting of various craft and trade unions which represent individual construction workers, filed suit against the school district in Muskegon Circuit Court seeking to enjoin defendant from receiving bids or awarding contracts which would not require the payment of prevailing wage rates and fringe benefits. The court, Ronald H. Pannucci, J., entered an order permanently enjoining defendant as plaintiff had requested and finding defendant guilty of a misdemeanor for violating the prevailing wage act. Defendant appealed by leave granted, raising several issues. *Held:*

1. Defendant's contention that plaintiff does not have standing to bring the lawsuit because it failed to allege or show any injury to itself or its members as a result of defendant's acts is rejected. Plaintiff has legal standing to prosecute the lawsuit.

2. The circuit court had equity jurisdiction to issue an injunction, based upon an injury to plaintiff's members' property rights.

3. A school board need not always comply with the prevailing wage act on school construction projects. Rather, only those

REFERENCES FOR POINTS IN HEADNOTES

[1] 59 Am Jur 2d, Parties § 27.
[2] 21 Am Jur 2d, Criminal Law § 337.
[3, 4] 73 Am Jur 2d, Statutes § 46.
[4, 6] 74 Am Jur 2d, Statutes §§ 250, 254.
[5, 7] 48 Am Jur 2d, Labor and Labor Relations § 595.
  65 Am Jur 2d, Public Works and Contracts § 204.

contracts for "state projects" sponsored or financed in whole or in part by the state which require the use of construction mechanics and which contracts are not subject to the jurisdiction of the state Civil Service Commission need comply with the prevailing wage act. The trial court, by adopting plaintiff's construction of the act and by finding that by failing to provide for the payment of prevailing rates and benefits defendant was guilty of a misdemeanor, misconstrued the provisions of the prevailing wage act. Plaintiff's assertion that a school board must always require its contractors to offer workers prevailing wages and benefits on a school construction project is erroneous.

4. Defendant's school construction and remodeling project is neither sponsored nor financed by the state. Thus, the prevailing wage act is inapplicable.

Reversed. The permanent injunction is dissolved.

1. ACTIONS — STANDING — WORDS AND PHRASES.

"Standing" is a term used to denote that a party's interest in the outcome of a case is sufficient to ensure sincere and vigorous advocacy, but evidence that a party has engaged in full and vigorous advocacy, by itself, is not sufficient to confer standing on a party; a litigant attempting to enforce or vindicate a right extended by statute must also show that he will be detrimentally affected in a manner different than the citizenry at large.

2. EQUITY — JURISDICTION — CRIMINAL VIOLATIONS — INJUNCTIONS.

Equity jurisdiction is available to enjoin criminal violations only in cases of public or private nuisance or of injury to property rights.

3. STATUTES — JUDICIAL CONSTRUCTION — COURT OF APPEALS.

It is the duty of the Court of Appeals to discover and effectuate the legislative intent in enacting a statute, and the Court may depart from a literal reading of a statute if such action will avoid a result patently inconsistent with the policies to be effected by the statute.

4. STATUTES — JUDICIAL CONSTRUCTION — COURT OF APPEALS.

The Court of Appeals has a duty to give effect to all of the words used in a statute if this can be accomplished without violence to the manifest intent of the Legislature; where possible, the Court must adopt a construction which makes the entirety of the statute meaningful.

5. LABOR RELATIONS — SCHOOL BOARDS — CONSTRUCTION MECHANICS — PREVAILING WAGE ACT.

A school board need not always comply with the prevailing wage act on school construction projects; rather, only those contracts for "state projects" sponsored or financed in whole or in part by the state which require the use of construction mechanics and which contracts are not subject to the jurisdiction of the state Civil Service Commission need comply with the prevailing wage act (MCL 408.551 *et seq.;* MSA 17.256[1] *et seq.).*

6. STATUTES — JUDICIAL CONSTRUCTION.

A statute is to be construed as a unified whole to give effect to each of its provisions and to produce harmony and consistency in the internal workings of the statute.

7. SCHOOLS — TAXATION — PURCHASE, CONSTRUCTION OR REMODELING OF SCHOOLS — STATE SPONSORSHIP — PREVAILING WAGE ACT.

The fact that the Legislature authorizes a school district to levy taxes to raise money for the purchase, construction or remodeling of a school facility does not constitute state sponsorship of the project for purposes of the prevailing wage act (MCL 408.551 *et seq.;* MSA 17.256[1] *et seq.).*

*McCroskey, Feldman, Cochrane & Brock* (by *Seymour L. Muskovitz),* for plaintiff.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick B. Mooney),* for defendant.

Before: R. M. MAHER, P.J., and GRIBBS and K. N. SANBORN,* JJ.

PER CURIAM. Defendant appeals by leave granted from an order granting a permanent injunction entered in the Muskegon County Circuit Court on October 13, 1982. The injunction enjoined defendant "from receiving bids and/or awarding contracts which do not require paying the prevailing wage rate and fringe benefits" pursuant to MCL 408.551 *et seq.;* MSA 17.256(1) *et seq.*

On September 18, 1981, defendant purchased

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Wesley School to be used as a special education facility. Approximately $220,000 of the purchase price was received from the State of Michigan pursuant to MCL 388.1656; MSA 15.1919(956).

Defendant then began to solicit bids for additions to, and the remodeling of, the school. The bid specifications for this project did not include provisions for the payment of wages and fringe benefits at the prevailing rates. Plaintiff became aware of this fact and filed its suit, requesting injunctive relief.

After a show cause hearing, the trial court concluded that plaintiff's proposed construction of MCL 408.551 *et seq.;* MSA 17.256(1) *et seq.* (hereinafter referred to as "the prevailing wage act") was correct. The court granted a permanent injunction premised on its finding that, by failing to provide for the payment of prevailing rates and benefits, defendant was guilty of a misdemeanor. MCL 408.557; MSA 17.256(7).

I

*Does plaintiff have standing to bring this suit?*

Defendant first alleges that plaintiff does not have standing to bring this lawsuit because it has failed to allege or show any injury to itself or its members as a result of defendant's acts.[1]

"Standing" is a term used to denote that a party's interest in the outcome of a case is sufficient to ensure sincere and vigorous advocacy. At the same time, however, evidence that a party has engaged in full and vigorous advocacy, by itself, is insufficient to confer standing on a party. A litigant attempting to enforce or vindicate a right

[1] Plaintiff is not a union. Rather, plaintiff is a labor organization consisting of various craft and trade unions which represent individual construction workers.

extended by statute must also show that he will be detrimentally affected in a manner different than the citizenry at large. *Alexander v City of Norton Shores,* 106 Mich App 287; 307 NW2d 476, *lv den* 411 Mich 1004 (1981). Defendant asserts that until a contract has actually been awarded any harm to plaintiff is speculative since the low bidder on the contract may well offer prevailing wage and benefit rates. Defendant further notes that the prevailing wage act does not require that union employees be hired but, rather, only that prevailing wages and benefits be extended to those workers who are hired. Finally, defendant contends that it is obvious that plaintiff cannot be harmed by defendant's alleged failure to comply with the act because plaintiff, itself, is clearly incapable of actually being employed by defendant.

The first of defendant's arguments for finding that plaintiff lacks standing—that harm may never occur because the contract may ultimately be awarded to a contractor offering prevailing wages and benefits—goes to whether plaintiff is entitled to the injunctive relief it requested, not whether it has standing to prosecute this action.

Defendant's argument that plaintiff lacks standing because the individual members of the trade associations it represents have no right to employment under the act is based upon this Court's opinion in *Kaminskas v Detroit,* 68 Mich App 499; 243 NW2d 25 (1976), *lv den* 399 Mich 826 (1977). In *Kaminskas,* various associations representing city employees sought an injunction to restrain the City of Detroit from hiring provisional employees, which hiring was alleged to be in violation of the city charter. This Court upheld the lower court's determination that the plaintiff associations lacked standing, noting that these associations failed to

allege that they were authorized to represent any-
one who had been injured by the hiring of provi-
sional employees. *Kaminskas, supra,* p 503.[2]

In this case, by way of contrast, George Carron,
an officer of the plaintiff organization, made the
following allegations in an affidavit which was
filed with plaintiff's complaint for declaratory
judgment:

"1. The Muskegon Area Intermediate School District
has advertised for bids for alterations and repairs to
certain school buildings.
"2. The advertising for bids did not contain any
requirement that the bidders be required to pay the
prevailing wage rate.
"3. The bid documents do not contain any require-
ment that the contractors pay the prevailing wage rate.
"4. In my experience, under such circumstances, the
prevailing wage rate is not paid to most, if not all of the
workers.
"5. The journeymen members of the various trades
belonging to the Muskegon Building and Construction
Trades will not be hired or utilized in the alterations
and repairs if *[sic]* the school buildings that are the
subject of the bids.
"6. Irreparable harm will occur to these members
because a significant number of them are unemployed
and they will not be employed in the above subject
project. If the prevailing wage rate were required to be
paid, a substantial, if not all, journeymen hired for the
project would be members of the Muskegon Building
and Construction Trades."

In contrast to the situation in *Kaminskas,* the
affidavit filed here in support of the requested
injunctive relief shows that plaintiff does represent
trade organizations whose individual members will

---

[2] Indeed, the Court in *Kaminskas* noted in fn 2 that the plaintiff
associations had indicated in their answers to defendant's interrogato-
ries that their members' injuries were "immaterial".

allegedly be harmed by defendant's failure to require all bidding contractors to offer prevailing wages and benefits. It is true that none of the individual members of the organizations represented by plaintiff has a right to a job on the Wesley School project if prevailing wages and benefits must be offered by defendant. Plaintiff alleges, however, that, if the prevailing wage act is complied with, the reality is that substantial numbers of these workers would, indeed, receive jobs on the project. Although defendant may contest these allegations, this again goes to whether plaintiff is entitled to the relief it requested, not its standing to bring this lawsuit.

Defendant's final argument that plaintiff lacks standing is based on plaintiff's status as an association of trade organizations—an association which is concededly incapable of being employed on the project. We disagree that this fact deprives plaintiff of standing.

In *White Lake Improvement Ass'n v City of Whitehall,* 22 Mich App 262; 177 NW2d 473 (1970), plaintiff sued to abate a nuisance allegedly caused by defendants' discharge of pollutants into White Lake. Although plaintiff owned no property abutting the lake, some of its members were riparian landowners on the lake. The Court, speaking through Judge (now Justice) LEVIN, found that plaintiff had standing, stating:

"True, the plaintiff association owns no land, but its sole purpose is to represent the interest of its members, many of whom are riparian landowners, in preventing the pollution of White Lake.

"No constructive purpose would be served by requiring the members of the plaintiff association who are riparian owners to maintain this action individually and thereby require that they seek in some other

fashion financial and other support from the other affected landowners. Additionally, allowing the landowners to associate together for this purpose may avoid a multiplicity of suits; the difficulties that are likely to be encountered where there are a large number of plaintiffs are all too familiar to anyone who has had experience in such litigation. The most expedient way for the riparian owners to obtain a determination on the merits is to allow them to combine and join together for this purpose with others of a like interest under a single banner both before and at the time of suit: 'The only practical judicial policy when people pool their capital, their interests or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all.' " (Footnote omitted.) *White Lake,* pp 272-273.

Defendant relies on *Michigan License Beverage Ass'n v Behnan Hall, Inc,* 82 Mich App 319, 325-326; 266 NW2d 808 (1978), in which one panel of this Court drew the following distinction between *White Lake* and the matter which it had to resolve:

"A circumstance in the *White Lake* case that distinguishes it from the facts before us is that the association in the former was constituted for solely representative purposes. *Id.,* 272; 177 NW2d 477. In the case under review the facts indicate that plaintiff's corporate purpose is unrelated to that of a litigation representative. Further, the cases upon which *White Lake* was premised involved associations that acted as a class representative or sought to establish rights in which they had a direct interest, or without which their existence would terminate. None of these factors characterize plaintiff's position in the instant litigation." (Footnotes omitted.)

In the case *sub judice,* it is clear that plaintiff was organized as a representative association to enhance the political and economic power of its

trade organization members and, ultimately, the individual members of these trade organizations.[3] Clearly, as in *White Lake,* plaintiff here was organized to establish and protect the rights and interests of its members. Plaintiff has a direct interest in defendant's compliance with the prevailing wage act since its existence and health is dependent upon the existence and health of its member organizations, which organizations will wither or die if they are unable to effectively protect their members.

We finally note that the prevailing wage act explicitly allows prevailing wages and benefits to be "determined by collective-bargaining agreements or understandings between bona fide organizations of construction mechanics and their employers". MCL 408.552; MSA 17.256(2). See also MCL 408.554; MSA 17.256(4). The Legislature, then, has explicitly recognized that labor organizations which represent construction mechanics will play a major role in the act's application. This fact supports our holding that plaintiff has legal standing to prosecute this lawsuit.

## II

*Does the circuit court have equity jurisdiction in this matter?*

---

[3] The Court in *License Beverage* refers to both an association constituted for "representative purposes" and an association organized as a "litigation representative". To the extent that *License Beverage* may be read as requiring an association to be organized with the intention of serving as a "litigation representative" before it may be deemed to have standing, we disagree with that decision. The association in *White Lake* was not organized with the intention of instituting litigation. The White Lake Association was organized as a nonprofit corporation under the laws of this state in 1951 "to prevent the pollution of White Lake, to promote cleanliness and good sanitary conditions around the lake and the public welfare of the area". *White Lake, supra,* p 268.

The trial court rested its equity jurisdiction on the fact that plaintiff was attempting to enjoin a violation of a penal statute. Specifically, MCL 408.557; MSA 17.256(7) makes it a misdemeanor for a person or entity subject to the prevailing wage act to violate its provisions. However, as defendant asserts, equity jurisdiction is available to enjoin criminal violations only in cases of public or private nuisance or of injury to property rights. *Michigan License Beverage Ass'n v Behnan Hall, Inc, supra,* p 327. In this case, if equity jurisdiction was properly invoked, the basis for this jurisdiction must rest on an injury to property rights.

We believe that *Glover v Malloska,* 238 Mich 216; 213 NW 107 (1927), supports equitable jurisdiction in this case. In *Glover,* plaintiffs, wholesale dealers in petroleum products in the City of Flint, sued to enjoin defendant's utilization of a lottery scheme designed to increase his share of the wholesale petroleum market. The Court determined that plaintiffs enjoyed property rights of a pecuniary nature in the continued success of their businesses and ordered that defendant be restrained from continuing its lottery scheme.

Although an analogy to *Glover* would be more compelling if those contractors who actually offered the prevailing wage and benefit rates had sued for the injunction, we nonetheless find that plaintiff has a sufficient pecuniary interest in this case to invoke the court's equity jurisdiction. The individual members of the trade organizations which make up the plaintiff organization are in direct competition with nonmembers for construction jobs. Defendant's failure to include a prevailing wage and benefit specification in the contract to perform the remodeling and alterations— whether legal or illegal—was clearly undertaken

with the purpose of permitting contractors to pay their workers less than prevailing wage and benefit rates. Moreover, plaintiff alleges that it can prove that, as a result of defendant's failure to comply with the prevailing wage act, its members' members were deprived of employment they would otherwise have enjoyed. Under these circumstances, the circuit court had equity jurisdiction to issue an injunction.

## III

*Did the trial court correctly construe the provisions of the prevailing wage act?*

A complete understanding of the statutory construction problem to be resolved in this case requires us to set forth the historical genesis of this controversy. In *Bowie v Coloma School Bd,* 58 Mich App 233; 227 NW2d 298 (1975), this Court determined that a school district was not a "contracting agent" nor the construction of a public school building a "state project" within the meaning of the then existing definitional provisions embodied in MCL 408.551, subds (b) and (c); MSA 17.256(1), subds (b) and (c).[4] The *Bowie* Court's construction of the prevailing wage act's definition of "contracting agent" meant that school districts were simply not subject to the act—that school boards were never required to insist that their

---

[4] At the time *Bowie* was decided, MCL 408.551; MSA 17.256(1) provided in pertinent part:

"(b) 'State project' means any new construction, alteration, repair, installation, painting, decorating, completion, demolition, conditioning, reconditioning or improvement of public buildings, works, bridges, highways or roads authorized by a contracting agent.

"(c) 'Contracting agent' means any officer, board or commission of the state, or any state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or to perform the same by the direct employment of labor."

contractors' workers be given prevailing wages and benefits on school construction projects.

After the *Bowie* decision, a bill was introduced in the Michigan House of Representatives which would have amended the definition of "contracting agent" to include explicitly school boards and to include explicitly within the definition of "state project" construction work performed on school buildings.[5] This bill did not successfully proceed through the Michigan Legislature. The same amendments were again proposed in the House of Representatives in 1977. The bill was successful[6] at this time and "state project" and "contracting agent" are now defined in MCL 408.551; MSA 17.256(1) as follows:

"(b) 'State project' means new construction, alteration, repair, installation, painting, decorating, completion, demolition, conditioning, reconditioning, or improving of public buildings, schools, works, bridges, highways, or roads authorized by a contracting agent.

"(c) 'Contracting agent' means any officer, school board, board or commission of the state, or a state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or to perform a state project by the direct employment of labor."

Clearly, as plaintiff asserts (and not disputed by defendant), defendant is a "contracting agent" and the remodeling and additions to the Wesley School constitute a "state project". However, language appearing in MCL 408.552; MSA 17.256(2) suggests that these facts are insufficient by themselves to trigger the requirement that a school district actu-

[5] House Bill 5419 introduced in 1975 included the identical amendments which ultimately became the law in 1979.

[6] 1978 PA 100, § 1, effective March 30, 1979.

ally comply with the prevailing wage act. MCL 408.552; MSA 17.256(2) provides in pertinent part:

> "Every contract executed between a contracting · agent and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a state project which requires or involves the employment of construction mechanics, other than those subject to the jurisdiction of the state civil service commission, *and which is sponsored or financed in whole or in part by the state* shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed." (Emphasis added.)

Plaintiff, relying on certain testimony concerning, and analyses of, the bill resulting in the amendment of the definitional section of the prevailing wage act, asserts that the Legislature intended that a school board must always require its contractors to offer workers prevailing wages and benefits on a school construction project. This is in contrast to other entities defined as "contracting agents", which plaintiff acknowledges need only insist upon the extension of prevailing wages and benefits to workers on those "state projects" which are, at least, partially sponsored or financed by the state.

It is our duty to discover and effectuate the legislative intent in enacting a statute, *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956), and we may depart from a literal reading of a statute where this will avoid a result patently inconsistent with the policies to be effected by the statute, *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976). However, we are not convinced that the Legislature intended that a

school board must always comply with the prevailing wage act on school construction projects, regardless of whether the board receives sponsorship or financing from the state for that project. Instead, it appears to us that the Legislature simply desired to overrule this Court's conclusion in *Bowie* that school boards were never subject to the act. This construction of the amended act does not result in absurd consequences. Instead, it merely places school boards in the same position as other entities subject to the act.

Moreover, if we were to accept plaintiff's construction of the amended act, we would be rendering without meaning a phrase appearing in MCL 408.552; MSA 17.256(2) (at least whenever a school board is the "contracting agent"). It is our duty, however, to give effect to all of the words used in a statute if this can be accomplished without violence to the manifest intent of the Legislature. Where possible, we must adopt a construction which makes the entirety of the statute meaningful.[7] *Deshler v Grigg*, 90 Mich App 49, 53-54; 282 NW2d 237 (1979), *lv den* 407 Mich 875 (1979); *Erickson v Dep't of Social Services*, 108 Mich App

---

[7] Although not advanced by plaintiff, one construction of MCL 408.552; MSA 17.256(2) which would support plaintiff's position and, at least facially, would not contravene the rule that all the words used in a statute must be given effect follows. Rather than construe the phrase "which is sponsored or financed in whole or in part by the state" as a condition precedent on the applicability of the act, we could construe this phrase as pertaining to the exclusion appearing in MCL 408.552; MSA 17.256(2). That is, the only construction projects excluded from the ambit of the act are those "subject to the jurisdiction of the State Civil Service Commission" and "which [are] sponsored or financed in whole or in part by the state". Apart from the fact that plaintiff's failure to advance this construction may be taken as reflecting its dubious nature, this construction also fails to truly effectuate all of the words in the statute. To our knowledge, any project subject to the jurisdiction of the state Civil Service Commission is also sponsored or financed in whole or in part by the state. Thus, to accept this construction requires us to construe a critical phrase in MCL 408.552; MSA 17.256(2) as a mere redundancy.

473, 483; 310 NW2d 428 (1981) (Bronson, J., dissenting), lv den 414 Mich 893 (1982).

Plaintiff also argues that, if we hold that there must be at least partial state sponsorship or financing of a school construction project before the prevailing wage act must be complied with, MCL 408.553; MSA 17.256(3) becomes meaningless. The language critical to this argument provides:

"A contracting agent, before advertising for bids on a state project, shall have the commissioner determine the prevailing rates of wages and fringe benefits for all classes of construction mechanics called for in the contract."

Plaintiff's contention is based on the assumption that each "contracting agent" must include as part of the specifications of any contract which it lets a schedule of prevailing wages and fringe benefits. If, indeed, MCL 408.553; MSA 17.256(3) does require that a school board include prevailing wage and benefit rates in the specifications of any contract it offers, our construction of MCL 408.552; MSA 17.256(2) is suspect. We find, however, that MCL 408.553; MSA 17.256(3) only applies to those contracts that fall within the ambit of the act by virtue of the qualifying language appearing in MCL 408.552; MSA 17.256(2). Under this construction, the reference to "the contract" in MCL 408.553; MSA 17.256(3) pertains only to those contracts for "state projects" sponsored or financed in whole or in part by the state which require the use of construction mechanics and which contracts are not subject to the jurisdiction of the state Civil Service Commission. A statute is to be construed as a unified whole to give effect to each of its provisions and to produce harmony and consistency in the internal workings of the statute. *Washtenaw*

*County v Saline River Intercounty Drainage Bd,*
80 Mich App 550, 555; 264 NW2d 53, *lv den* 402
Mich 944 (1978). To accept plaintiff's construction
of the interplay between MCL 408.552; MSA
17.256(2) and MCL 408.553; MSA 17.256(3) would
result in an inconsistency within the provisions of
the prevailing wage act and would render most of
MCL 408.552; MSA 17.256(2) meaningless. As de-
fendant notes: "[I]f section 3 requires that all
contracting agents include a schedule of prevailing
wage and benefit rates in all bid specifications,
irrespective of state sponsorship or financing, then
obviously the qualifying language of section 2 is
effectively erased."

We also note that in addressing the applicability
of the prevailing wage act in *West Ottawa Public
Schools v Director, Dep't of Labor,* 107 Mich App
237, 247-248; 309 NW2d 220 (1981), *lv den* 413
Mich 917 (1982), this Court implicitly construed
the act in accordance with the construction we
have given it. Similarly, dictum in *Bowie v Coloma
School Bd, supra,* p 242, explicitly adopted the
construction of the prevailing wage act which we
have given to it.

## IV

*Is defendant's school construction and remodel-
ing project sponsored or financed, at least in part,
by the state?*

Plaintiff asserts that, even assuming defendant's
construction of the prevailing wage act is correct
(and we have held that it basically is), defendant's
school project is both sponsored and financed in
part by the state.

Plaintiff first argues that the project is "state
sponsored" because the local taxes which were

raised to pay for the project were levied pursuant to the statutory authorization of the Legislature. See MCL 380.1212; MSA 15.41212. In support of this argument, plaintiff relies on *West Ottawa Public Schools, supra.* There, this Court held that a school board which finances a "state project" through bonds approved and qualified in accordance with MCL 388.951 *et seq.;* MSA 3.424(111) *et seq.* receives state sponsorship within the meaning of MCL 408.552; MSA 17.256(2). Crucial to the Court's holding in *West Ottawa Public Schools* was the fact that the state acts as a surety for the payment of qualified bonds when they become due. In the case *sub judice,* however, the state has assumed no responsibility for the project.

We reject the notion that the Legislature's authorization to levy taxes constitutes the sponsorship of a building project. Such a construction defeats the purpose underlying the qualifying language in MCL 408.552; MSA 17.256(2), particularly in the case of school boards which are creatures of statute, enjoying no powers beyond those expressly granted by, or reasonably implied from, statute. *Senghas v L'Anse Creuse Public Schools,* 368 Mich 557; 118 NW2d 975 (1962). Indeed, plaintiff might as cogently argue that, because the Legislature allows public school boards to exist, every contract which a public school board enters into is state sponsored.

Plaintiff also asserts that the Wesley School construction project is financed in part by the state. In support of this argument, plaintiff relies on the fact that some of the money used to purchase the Wesley School was received from the state and, because the building was acquired by the school board with the intention of making additions and remodeling, the project is partially financed by the state.

We note that MCL 408.551(b); MSA 17.256(1)(b) does not include within the definition of "state project" either the purchase of a building or the purchase of a building upon which the contracting agent intends at the time of purchase to perform construction work. It is not disputed by plaintiff that state funds are not to be utilized to pay for the actual construction work to be performed on the Wesley School. The prevailing wage act is in derogation of the common law and contains penal provisions for violation of the act. As such, it must be strictly construed. *Bowie, supra,* p 236. Plaintiff has failed to convince us that the Legislature intended to treat the purchase of, and contemplated construction work to, a school building as a single "state project" falling within the meaning of the prevailing wage act. Clearly, a literal application of MCL 408.551(b); MSA 17.256(1)(b) does not permit this construction, and, given the principle of strict construction applicable to this matter, we decline to adopt plaintiff's proffered construction.

Reversed. The permanent injunction is dissolved. We assess no costs; a public question.