WESTERN MICHIGAN UNIVERSITY BOARD OF CONTROL v
STATE OF MICHIGAN

Docket Nos. 164452, 166312. Submitted May 2, 1995, at Grand Rapids.
Decided July 7, 1995, at 9:15 A.M. Leave to appeal sought.

The Western Michigan University Board of Control brought an
action in the Kalamazoo Circuit Court against the State of
Michigan, seeking a declaration whether workers at a construc-
tion project at the university had to be paid not less than the
prevailing wage, as provided by the prevailing wage act, MCL
408.551 *et seq.*; MSA 17.256(1) *et seq.* Associated Builders &
Contractors, Inc., intervened as a plaintiff and Michigan State
Building and Construction Trades Council, AFL-CIO, inter-
vened as a defendant. The court, Donald E. Goodwillie, J.,
granted summary disposition for the plaintiffs, ruling that the
act did not apply to the construction project. Each defendant
appealed, and the appeals were consolidated.

The Court of Appeals *held:*

MCL 408.552; MSA 17.256(2) provides that workers on a state
project that is financed or sponsored, in whole or in part, by the
state must be paid not less than the prevailing wage rate in the
locality where the work is performed. The act does not apply in
this case because the construction project was not financed or
sponsored by the state. Revenue bonds were issued by the
university to pay for the project and to reimburse the univer-
sity general fund for project expenses incurred before the bonds
were issued. The bond issue expressly stated that the state was
not responsible for repayment and that no state appropriations
would be used for repayment. Finally, tax-exempt status
granted by the state for the bond issue did not constitute state
sponsorship of the project.

Affirmed.

COLLEGES AND UNIVERSITIES — PREVAILING WAGE ACT.

The prevailing wage act, which provides that workers in a
construction project that is financed or sponsored by the state

REFERENCES

Am Jur 2d, Public Works and Contracts § 211.
See ALR Index under Public Works and Contracts.

must be paid not less than the prevailing wage rate in the locality where the work is performed, does not apply to a state university construction project that is financed with a tax-exempt bond issue that is to be repaid with funds other than those appropriated by the state (MCL 408.552; MSA 17.256[2]).

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Don M. Schmidt* and *Charles E. Ritter*), and *Keith A. Pretty,* for Western Michigan University Board of Control.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Peter J. Kok* and *Timothy J. Ryan*), for Associated Builders and Contractors, Inc.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Kelly Keenan,* Assistant Attorney General, for State of Michigan.

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *John R. Canzano*), and *Donald J. Prebenda,* for Michigan State Building Trades and Construction Council, AFL-CIO.

Before: DOCTOROFF, C.J., and HOLBROOK, JR., and CORRIGAN, JJ.

DOCTOROFF, C.J. The trial court granted plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10), ruling that the prevailing wage act, MCL 408.551 *et seq.*; MSA 17.256(1) *et seq.,* did not apply to a Western Michigan University (WMU) construction project because the project was neither financed nor sponsored by the state. We affirm.

In early 1986, WMU began to conduct feasibility studies on changes to its recreation facility. WMU paid for these studies with funds out of its general fund. As a result of the studies, the WMU Board of Control adopted an increase in the student enroll-

ment fee to finance the project. Construction on the project began in 1992. When WMU realized that the increase in the student enrollment fee would not cover all the expenses, it borrowed money from the general fund. On March 13, 1992, WMU sold $59,495,000 of tax-exempt bonds and adopted a declaration of official intent to reimburse itself for the project expenditures with the bond proceeds. The bond debt would be funded with use fees assessed on students.

WMU wrote to the Michigan Department of Labor to ask whether WMU would be required to pay the project's construction workers at the rates determined pursuant to the prevailing wage act. On four separate occasions between November 1991 and March 1992, the Department of Labor informed WMU that the act did not apply to their project because state funds were not going to be used. On June 23, 1992, pursuant to a question from a state legislator, the Attorney General released an opinion stating that the act applied to WMU's project regardless of its funding source. OAG, 1991-1992, No. 6723, p 156. The WMU Board of Control then filed a declaratory judgment action asking the trial court to determine whether the act applied to the construction project. Associated Builders & Contractors, Inc., intervened as a plaintiff and Michigan State Building and Construction Trades Council, AFL-CIO, intervened as a defendant. All parties filed motions for summary disposition. Ruling that the act did not apply to WMU's project, the trial court granted plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10) and denied defendants' motion for summary disposition.

Summary disposition pursuant to MCR 2.116(C)(10) is proper when, except with regard to damages, there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. On appeal, we review the trial court's grant of summary disposition de novo. *Allstate Ins Co v Elassal,* 203 Mich App 548, 552; 512 NW2d 856 (1994). The prevailing wage act states, in relevant part:

> Every contract executed between a contracting agent and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a state project which requires or involves the employment of construction mechanics . . . and which is sponsored or financed in whole or in part by the state shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed. [MCL 408.552; MSA 17.256(2)].

In his opinion, the Attorney General determined that the relevant question was whether the project was a "state project" and whether it was "sponsored in whole or in part by the state" within the meaning of the act. The Attorney General then merged these two questions and determined that, because WMU is a state university, the state sponsored the project.

On the other hand, the trial court reasoned that three questions had to be resolved in determining whether the act applied: (1) whether WMU is a "contracting agent"; (2) whether the project is a "state project"; and (3) whether the project is being "sponsored or financed in whole or in part by the state." While the trial court agreed with the Attorney General that WMU was a contracting agent and the project was a state project, the court held that the project was not "sponsored or

financed in whole or in part by the state." We hold that the trial court properly interpreted the requirements of the statute.

Our Court has addressed this issue before. In *Muskegon Building & Construction Trades v Muskegon Area Intermediate School Dist*, 130 Mich App 420; 343 NW2d 579 (1983), the plaintiff requested a determination whether the Muskegon School Board would be required to comply with the prevailing wage act in a remodeling project for one of the schools. The plaintiff argued that, because the Legislature had recently amended the definition of "contracting agents" in the act to explicitly include school boards, the school board was required to comply with the act even though it raised the funds for the remodeling through its own tax levy. Our Court held that acceptance of the plaintiff's interpretation would render meaningless the statutory requirement that the state project be "sponsored or financed in whole or in part by the state." *Id.* at 432-433.

Although *Muskegon* involved a school board and a tax levy rather than a state university and a bond issue, we find its reasoning applicable to this case. When construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render the statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). If possible, effect should be given to each provision. *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994). The Attorney General would deem all state projects to be sponsored by the state. This would render surplusage the requirement that a project be "sponsored or financed in whole or in part by the state." Because we find this issue to be dispositive, we need not address whether WMU is a "contracting agent" or

whether this is a "state project" as defined by the act.

Next, defendants argue that, even if all state projects are not deemed to be financed or sponsored by the state, this project was financed or sponsored by the state. It is undisputed that the state did not provide any direct capital outlays for the project. Defendants maintain that the state financed and sponsored the project indirectly. We disagree.

The words "finance" and "sponsor" are not defined in the act. Therefore, it is appropriate to consult a dictionary for their ordinary meaning. *Popma v Auto Club Ins Ass'n,* 446 Mich 460, 470; 521 NW2d 831 (1994). The verb "finance" is defined as "to supply the funds or capital for." *The American Heritage Dictionary* (New College Edition, 1976), p 492. "Sponsor" is defined as "one who binds himself to answer for another's default: SURETY [and] one who assumes responsibility for some other person or thing." *West Ottawa Public Schools v Director, Dep't of Labor,* 107 Mich App 237, 247-248; 309 NW2d 220 (1981), quoting *Webster's Third New International Dictionary* (Unabridged, 1970), p 2204.

First, defendants maintain that WMU used monies from its general fund to pay for certain expenses. The general fund did contain direct state appropriations, as well as funds from other sources. WMU admits that it paid for the feasibility studies out of its general fund. Plaintiffs also do not dispute that WMU paid the initial bills for the project out of the general fund. As the trial court stated, however, this does not imply that the project was financed by the state. When WMU issued the bond, it adopted a resolution to reimburse its general fund out of the bond proceeds. Lowell Rinker, WMU's assistant vice president for busi-

ness, stated that revenue bonds were issued in the amount of $59,495,000 to cover the estimated $45,230,000 cost of the project. Rinker also stated that fifty-eight percent of the university's general fund came from state appropriations. The other forty-two percent consisted of funding from nonstate sources. According to Rinker, the non-state cash in the general fund ranged from $22 million to $38 million while the project's temporary cash flow needs for the same period ranged from $95,000 to $7,100,000. This means that, even if WMU received no state appropriation, it still could have temporarily financed the project without state assistance until it received the funds from the bond issue.

Second, defendants claim that, because WMU pledged state income and property to repay the revenue bonds, the state partially financed the project. The bond issue expressly stated that the state was not responsible for repayment of the debt and that no state appropriations would be used for its repayment. WMU stated its intent to finance the bond with increased student user fees. If we accepted defendants' claim that all the property pledged to finance the bond is state property, then all of WMU's projects would qualify as state projects financed or sponsored by the state. As we stated above, not all state projects are financed or sponsored by the state.

Third, defendants argue that the state sponsored the project by granting WMU tax-exempt status for its bond issue. This argument has no merit. Although the State of Michigan will not gain the tax revenue it might have received on a taxable bond issue, loss of tax revenue does not qualify as sponsorship or financing of the project. The State of Michigan did not lose any more money or take on any greater financial risk than it would have if

the project had never been undertaken. The State of Michigan did not provide any capital outlay or debt service by granting tax-exempt status. The State of Michigan neither sponsored nor financed WMU's construction project.

Under the prevailing wage act, workers on state projects that are financed or sponsored, in whole or in part, by the state must be paid not less than the prevailing wage rate in the locality where the work is performed. MCL 408.552; MSA 17.256(2). Because WMU's project was not financed or sponsored by the state, the prevailing wage act does not apply to this project.

Affirmed.