## SINAS v. CITY OF LANSING.

1. EMINENT DOMAIN—SOVEREIGNTY.
   Eminent domain is an inherent attribute of sovereignty.

2. SAME—NECESSITY.
   The State may not exercise its right of eminent domain except upon grounds of its own necessity.

3. SAME—CITIES—COMMUNITY COLLEGE—TRANSFER OF LAND.
   A city and a community college, located within the city, are creatures of the sovereign State, and where the city is authorized to do so, it may condemn property under the power of eminent domain and transfer the property to the college where that action may be done pursuant to authorization of the legislature (PA 1945, No 344, as amended).

4. MUNICIPAL CORPORATIONS—EMINENT DOMAIN—TRANSFER OF CONDEMNED LAND—MOTION FOR SUMMARY JUDGMENT.
   It will not be presumed that defendant community college, which

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Eminent Domain § 2.
[2] 26 Am Jur 2d, Eminent Domain § 27 et seq.
[3, 4] 26 Am Jur 2d, Eminent Domain § 61.
[5] 26 Am Jur 2d, Eminent Domain § 42.
[6, 8–11,13, 14] 38 Am Jur, Municipal Corporations § 487 et seq.
[7] 38 Am Jur, Municipal Corporations § 401.
[12] 26 Am Jur 2d, Eminent Domain § 13 et seq.

does not have the power of eminent domain, has paid a fair market value for land involved in transfer to it from city which had condemned the land as part of a project to eliminate urban blight, where action to enjoin the transfer was disposed of in the circuit court on motion for summary judgment without a testimonial hearing on the subject of fair market value (PA 1945, No 344, as amended; GCR 1963, 117).

5. EMINENT DOMAIN—REAL PROPERTY—URBAN RENEWAL—DISPOSITION.

Elimination of urban blight is an adequate justification for the exercise of the power of eminent domain, even where acquisition is followed by sale to private individuals, such acquisition of urban renewal property being sustainable *per se*, irrespective of its disposition (PA 1945, No 344, as amended).

6. MUNICIPAL CORPORATIONS—URBAN RENEWAL LAND—VALIDITY OF DISPOSITION.

The validity of the disposition of property acquired for urban renewal purposes by a city through the exercise of the power of eminent domain must be measured without reference to the acquisition (PA 1945, No 344, as amended).

7. SAME—LOAN OF CREDIT.

A city is prohibited from loaning its credit for any public purpose except as provided by law (Const 1963, art 7, § 23).

8. SAME—URBAN RENEWAL LAND—DISPOSITION—STATUTES.

A city cannot give away land it has acquired for urban renewal purposes through the exercise of its power of eminent domain, in the absence of statutory authority so to do (PA 1945, No 344, as amended).

9. SAME—URBAN RENEWAL PROPERTY—TRANSFER TO PUBLIC AGENCIES—PAYMENT.

The authority of a city to transfer urban renewal property to an appropriate public agency for a defined public use is not dependent upon the payment of a fair market value (PA 1945, No 344, § 2, subd [g], as amended by PA 1965, No 227, §§ 4, subd [c], 6).

10. SAME—URBAN RENEWAL LAND—DISPOSITION.

The transfer of a portion of real property, acquired by a city for purposes of urban renewal, to public agencies for development for public use may be followed by the sale, lease, or exchange of the remainder in transactions with private companies or individuals to be used in accordance with the development plan (PA 1945, No 344, as amended).

11. SAME—TRANSFER OF URBAN RENEWAL LANDS—DISPOSITION.

A city may transfer urban renewal property to a public agency for public use at a price independent of the market value of such property, as the statute distinguishes between the use of the word "transfer" in regard to land for public use and the word "sale" in regard to land that is to be privately developed, without running afoul of the prohibition in the Constitution against loaning its credit where such municipal action is set forth by statute (Const 1963, art 7, § 26; PA 1945, No 344, as amended).

12. EMINENT DOMAIN—STATE AGENCIES.

A State agency may use its power of eminent domain for the benefit of another State agency where authorized to do so by law.

13. MUNICIPAL CORPORATIONS—URBAN RENEWAL—TAXATION.

Urban renewal projects are not divisive because they may effect the preservation of the taxable value of land within and adjacent to the redevelopment area as the total impact of the project is the effect sought by the legislature and if taxable values are not improved, it does not follow that the failure of a statute to bring about desired or intended results evinces constitutional infirmity (PA 1945, No 344, as amended).

14. SAME—CHARTERS—DISPOSAL OF URBAN RENEWAL PROPERTY—REFERENDUM.

Municipalities may properly dispose of real property acquired for urban renewal projects without a referendum even when a referendum is required by local charters and laws as they are statutorily granted the power to sell and convey urban lands despite local restriction (PA 1945, No 344, §§ 6, 13).

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Quinn and Gilmore, JJ., affirming Ingham, Coash (Louis E.), Salmon (Marvin J.), and Hughes (Sam Street), JJ. Submitted June 3, 1969. (Calendar No. 3, Docket No. 51,875.) Decided September 3, 1969.

7 Mich App 464, affirmed.

Complaint by Thomas G. Sinas against City of Lansing and Lansing Community College, interven-

ing defendant, to enjoin the transfer of land and the proposed future transfer of other land pursuant to a contract between the City of Lansing and Lansing Community College. Summary judgment for defendants. Plaintiff appealed. Court of Appeals affirmed. Plaintiff appeals. Affirmed.

*Sinas, Dramis, Brake & Werbelow (Lester N. Turner,* of counsel), and *Farhat, Burns, Treleaven & Luoma,* for plaintiff.

*Bruce S. King,* Special Assistant City Attorney, for defendant City of Lansing.

*Foster, Campbell, Lindemer & McGurrin (John L. Collins, J. Michael Warren,* and *Edmund E. Shepherd,* of counsel), for defendant Lansing Community College.

T. E. Brennan, C. J.

### The Case.

Plaintiff is a Lansing taxpayer who objects to the sale of city urban renewal land to the Lansing Community College.

Suit was filed in the Ingham circuit court on March 17, 1966. The circuit judges sat *en banc;* ultimately dismissed the cause on motion for summary judgment.[1]

The Court of Appeals affirmed. We do likewise.

Four issues are raised on appeal. Pertinent facts and applicable statutes are noted with the discussion of each issue.

### The Eminent Domain Argument.

Plaintiff argues that the city has no authority to use its power of eminent domain for the benefit of a

---

[1] See GCR 1963, 117.—Reporter.

separate unit of government. To this proposition, plaintiff cites *Trombley* v. *Humphrey* (1871), 23 Mich 471. The *Trombley Case* is distinguishable. It involved Michigan eminent domain exercised to benefit the United States. Justice COOLEY correctly reasoned therein that eminent domain is an inherent attribute of sovereignty; that our Federal system is one of dual sovereignty; that the State could not exercise its right of eminent domain except upon grounds of its own necessity.

There is no such relationship between the city and the college. Both are municipal corporations and creatures of the State of Michigan. Neither the city nor the college are sovereigns. Neither have any inherent power of eminent domain. Both derive their powers from the State, including any power of eminent domain.

There is no constitutional question, only a question of statutory interpretation. If the legislature has provided that the city can condemn property for the benefit of the college, then the city can do it. If the legislature has not so provided, then the city cannot do it. *People, for use of Regents of the University of Michigan,* v. *Brooks* (1923), 224 Mich 45; *People, for use and benefit of Regents of the University of Michigan,* v. *Pommerening* (1930), 250 Mich 391.


### THE "LOAN OF CREDIT" ARGUMENT.

On the state of the record before us, we cannot presume that the college has paid fair market value for the land involved here. The action was disposed of, at circuit, on motion for summary judgment, without a testimonial hearing on the subject of fair market value.

But even treating the case as one in which no value was paid, the courts below were correct.

The city of Lansing acquired the property involved by authority of PA 1945, No 344, as amended (MCLA §§ 125.71–125.83, Stat Ann 1958 Rev and Stat Ann 1968 Cum Supp §§ 5.3501–5.3513).

The underlying public purpose of that act is to eliminate urban blight. The elimination of urban blight is an adequate justification for the exercise of the power of eminent domain, even where the acquisition is followed by sale to private individuals. *In re Slum Clearance* (1951), 331 Mich 714.

If the acquisition of urban renewal property is sustainable *per se,* irrespective of its disposition, then the validity of the disposition must be measured without reference to the acquisition.

Constitutionally (Const 1963, art 7, § 26), a city is prohibited from loaning its credit for any public purpose "except as provided by law."

This means that in the absence of statutory authority, the city cannot give away urban renewal land, even for a public purpose.

Three references to PA 1945, No 344 demonstrate that the legislature has provided ample statutory authority to remove the transaction here complained of from the constitutional disability.

Section 6 (MCLA § 125.76, Stat Ann 1958 Rev § 5-.3506) provides, in part:

"After the acquisition of the real property, such property as will be used by public agencies shall be transferred to or placed under the jurisdiction of the appropriate public agencies for public use as defined in this act. The remainder of the land which, in accordance with the development plan, is to be devoted to private uses shall be sold, leased or exchanged to corporations, companies or individuals, or to urban redevelopment corporations whose use of such prop-

erty shall be in accordance with the limitations and conditions provided in the development plan."

Section 2, subd (g), as amended by PA 1965, No 227 (MCLA § 125.72, Stat Ann 1968 Cum Supp § 5-.3502) declares:

" 'Public use' when used with reference to land reserved for such purpose means only such uses as are for the general use and benefit of the public as a whole, such as schools, libraries, public institutions, administration buildings, parks, boulevards, playgrounds, streets, alleys, easements for sewers, public lighting, water, gas, or other similar utilities."

Section 4, subd (c) (MCLA § 125.74, Stat Ann 1958 Rev § 5.3504) states, in part:

"Such plan shall designate the location and extent of streets and other public facilities within the area and shall designate the location, character and extent of the categories of public and private land uses proposed for and within the area, such as residential, recreation, business, industry, schools."

The authority of a city to transfer urban renewal property to an appropriate public agency for a defined public use, is not dependent upon the payment of fair market value. The statute contemplates *sale* of land to be devoted to private uses and *transfer* of land to be used for public uses. We decline to read the two words as synonymous.

We held in *People, for use and benefit of Regents of the University of Michigan,* v. *Pommerening,* 250 Mich 391, at page 396,

"A State agency, vested with power of eminent domain, may not employ the power, directly or indirectly, for the use and benefit of another, *unless so authorized by law.*" (Emphasis supplied.)

It follows that, where authorized by law, a State agency may use its power of eminent domain for the use and benefit of another State agency.[2]

## The Tax-Base Issue.

Plaintiff makes a passing argument to the effect that the removal of the college property from the tax rolls works a frustration of the statutory design of preserving the taxable value of land within and adjacent to the urban redevelopment area.

It will suffice to reply that urban renewal projects are not divisible on this score. The total impact of the project is the effect sought by the legislation. And even if, upon total impact, taxable values are not improved, it does not follow that the failure of a statute to bring about the desired or intended results evinces constitutional infirmity.

## The Referendum Issue.

Plaintiff cites a charter limitation upon the city's power to convey real estate without the approving vote of a majority of the electors of the city voting on the proposal to sell. (Chap 14, § 14.3[d], Charter of Lansing, adopted November 8, 1955.)

PA 1945, No 344, § 13 (MCLA § 125.83, Stat Ann 1969 Rev § 5.3513) provides, in part:

"The powers granted in this act shall be in addition to powers granted to municipalities, the local legislative bodies thereof and other officials and bodies thereof under the statutes and local charters."

If the charter of the city completely prohibited the sale of real estate by the city council, with or without referendum, it is clear that PA 1945, No 344 would empower the city to sell and convey urban re-

---

[2] See, also, *People, for use of Regents of the University of Michigan,* v. *Brooks* (1923), 224 Mich 45.

newal lands "under terms and conditions fixed by the local legislative body." (Section 6 [MCLA § 125.76, Stat Ann 1958 Rev § 5.3506].) That the city council already has a limited power of sale does not prevent the statute from having the same force.

### CONCLUSION.

The judgment of the Court of Appeals, affirming summary judgment of the circuit court *en banc,* is affirmed.

DETHMERS, KELLY, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.