BOWIE v COLOMA SCHOOL BOARD

1. STATUTES—CONSTRUCTION—COMMON LAW—PENALTIES.

A statute which is in derogation of the common law and which provides for penalties in the event of violation must be strictly construed.

2. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT—LEGISLATIVE HISTORY.

The history of an act adopted by the Legislature may be examined as a part of the process of determining legislative intent.

3. STATUTES—SCHOOLS AND SCHOOL DISTRICTS—LEGISLATIVE INTENT—CONTRACTING AGENTS.

A statute governing wages to be paid by contractors constructing public buildings does not by its wording include any affirmative legislative intent to include school districts within its provisions; the Legislature intended that school districts would not be included as "contracting agents" within the statute (MCLA 408.551).

4. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION OF FACILITIES—STATE PROJECT.

A school district which constructed school facilities was not engaged in a state project where it acquired a construction site in its own name, its electors voted to borrow money and issue bonds to be discharged by local taxes, the district awarded contracts in its own name, no state funds were used in the construction, and the district in no way obligated the state or became obligated to the state.

5. SCHOOLS AND SCHOOL DISTRICTS—STATUTES—CONTRACTING AGENTS.

A school district was not a "contracting agent" within the meaning of a statute which governs wages paid on state construction projects where only local funds were used on a building project, with no support furnished by the state (MCLA 408.551).

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 21.
[2] 73 Am Jur 2d, Statutes §§ 145, 146.
[3–5] 68 Am Jur 2d, Schools § 56 *et seq.*

Appeal from Berrien, Julian E. Hughes, J. Submitted Division 3 November 14, 1974, at Grand Rapids. (Docket No. 16020.) Decided February 10, 1975.

Complaint by Arthur Bowie and others against the Coloma Board of Education for an injunction against further construction of certain school buildings and for payment of wage differentials. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Dennis S. McCune,* for plaintiffs.

*Thrun, Maatsch & Nordberg* (by *Robert M. Thrun* and *Donald J. Bonato),* for defendant.

Before: T. M. BURNS, P. J., and R. B. BURNS and CARLAND,* JJ.

CARLAND, J. This is a class action brought by plaintiffs on behalf of certain building trades (laborers, ironmakers, carpenters, plumbers and electricians) in Berrien County, Michigan. The defendant is the board of education of the Coloma public school district, a third-class district.

On January 25, 1971, the voters of the district approved the borrowing of $2,425,000 and the issuance of bonds by the district for the purpose of constructing certain school facilities and equipping the same.

During the 1970–71 school year, the district received certain funds from state aid and from federal agencies, none of which were used for the construction project here in question. The district

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

never borrowed money from the state to pay the principal and interest due on said bonds.

Said bonds were sold and the proceeds from the sale delivered to the district. Prior to the awarding of the contract for construction, the defendants were requested by plaintiffs to award said contract in accordance with the provisions of MCLA 408.551–558; MSA 17.256(1)–(8). After advertising for bids, the contract for construction was awarded. Neither the authorization for the publication of bids nor the contract awarded contained the "prevailing wage" clause required under the above mentioned statute.

On November 26, 1971, the plaintiffs filed their complaint claiming violation of the statute and seeking injunctive relief as well as the difference between actual wages paid to the plaintiffs and the prevailing wage paid in the building trades in Berrien county.

The defendants filed a motion for summary judgment and the matter was submitted to the trial judge for decision on certain stipulated issues which will be discussed later in this opinion. On November 29, 1972, the motion for summary judgment was granted in favor of defendants and plaintiffs appeal as a matter of right.

The issue raised is whether under the provisions of the statute referred to school districts constructing new schools are "contracting agents", constructing public buildings, which constitute "a state project". The pertinent portions of the statute which must be construed in deciding this issue are as follows:

"(b) 'State project' means any new construction, alteration, repair, installation, painting, decorating, completion, demolition, conditioning, reconditioning or im-

provement of public buildings, works, bridges, highways or roads authorized by a contracting agent.

"(c) 'Contracting agent' means any officer, board or commission of the state, or any state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or to perform the same by the direct employment of labor." MCLA 408.551; MSA 17.256(1).

At the outset, in construing this statute we are of the opinion that since it is in derogation of common law and since it provides for certain penalties in the event of violation, that it must be strictly construed. Having these precepts in mind, we must first seek to determine whether it was within the legislative intent that school districts should be included in and bound by the provisions of the statute. Under the principle of strict construction, the intent of the Legislature to include school districts within the statute must affirmatively appear.

The history of an "act" adopted by the Legislature may be examined as a part of the process of determining legislative intent. With this in mind, we note that as originally passed by the House of Representatives, section 1(c) read as follows:

"Contracting agent means any officer, board or commission of the state, *or political subdivision thereof* or any state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or perform the same by the direct employment of labor." (Emphasis supplied.)

Prior to its passage, an attempt was made in the House to amend the act by striking therefrom the words "or any political subdivision thereof" and such attempt was defeated. Following passage, the Michigan House Journal contains the following comments of Representatives Arnett and Sharpe.

"Rep. Arnett, having reserved his right to enter his protest against the passage of the bill, made the following statement:

" 'Mr. Speaker and members, I voted no on this bill. In the first place it was not properly explained to the members of the House who are not members of the Labor Committee and, second, because in section (c), page 2, it is pretty wide in its definition and inclusive in contracting agent. It gets down into the local areas and down to the Board of Education. It seems to me it places a burden upon them. Third, it interferes with collective bargaining. Now, we have heard a great deal about bargaining rights, not interfering with bargaining rights, and it seems to me like we are interfering with bargaining rights; we are interfering with contracts. It seems to me this is not the place for this legislature.'

"Rep. Sharpe, having reserved his right to enter his protest against the passage of the bill, made the following statement:

" 'Mr. Speaker, I voted no on House Bill 2101 because the questions which were asked that pertained to this bill were not properly answered, either because of the inability or the undesirability of answering the questions and I don't know the reason for sure, but I do think that the concept of the bill—there was nothing wrong with the concept—but it was too far reaching and for this reason, Mr. Speaker, I voted no on this particular bill, Bill No. 2101.' " Michigan House Journal, 1965, Vol 1, p 434.

In the Senate, the act was passed with the deletion of the words "or political subdivision thereof". In conference, the House adopted the act as passed by the Senate. We opine that in the construction of this statute this deletion may not be ignored. It must have been done with some purpose in mind and from the remarks of the representatives, it is concluded that the deletion is some evidence that "school districts" were not intended to be included in the statute.

The Attorney General in Opinion No. 4371,

dated March 6, 1968, finding that school districts are within the act, does so, as stated by the trial judge, after making determinations that:

" 'officer * * * of the state', as contained in section 1(c) includes members of boards of education and therefore local school district construction is included within the purview of this act [and] since boards of education are officers of the state, any money they receive from whatever source, including from local bonded indebtedness as in this case, become state funds and therefore the requirements of section 2 are met, *i.e.* 'sponsored in whole or in part by the state'."

Like the trial judge, we cannot agree with the conclusions thus reached and are unable to find from the indefinite words of the statute any affirmative legislative intent to include school districts within the provisions of the statute.

Both from the entitlement of the act and from subsection 1(b) thereof, it is apparent that we are concerned with "state project" only. By various statutes, the Legislature has many times dealt with local school districts.

MCLA 691.1401(b); MSA 3.996(101)(b), having to do with tort liability of governmental units reads as follows:

" 'Political subdivision' means any municipal corporation, county, township, charter township, school district, port district, or metropolitan district, or any combination thereof, when acting jointly, and any district or authority formed by 1 or more political subdivisions."

MCLA 124.531(b); MSA 5.4087(1)(b), having to do with intergovernmental transfers of functions and responsibilities reads as follows:

" 'Political subdivision' means a city, village, other incorporated political subdivision, county, school dis-

trict, community college, intermediate school district, township, charter township, special district or authority."

Also in MCLA 691.1401; MSA 3.996(101), we note that "political subdivision" as defined therein includes "any municipal corporation" and we also note that decisions of our Supreme Court have repeatedly defined "school districts" as "municipal corporations". It is significant that municipal corporations like school districts are not specifically mentioned in the act. We do not believe that the construction of a county courthouse could be held to be a "state project" because municipal corporations are not used in defining "contracting agent". In *Attorney General v Thompson,* 168 Mich 511, 520; 134 NW 722 (1912) it is stated:

"School boards have been uniformly held to be separate and distinct corporations. It has also been held that they are municipal corporations and state agencies."

Further, school districts are sometimes defined as "state agencies", *Presque Isle Township School District No 8 v Presque Isle County Board of Education,* 364 Mich 605; 111 NW2d 853 (1961); *Imlay Township Primary School District No 5 v State Board of Education,* 359 Mich 478; 102 NW2d 720 (1960). However the term "state agency" is not used in defining "contracting agent".

Throughout the long history of Michigan, our constitutions have mandated that the Legislature provide a system of common schools and throughout this history, local school districts have been the legislative instrument whereby this mandate has been fulfilled:

"Sec. 352. Every school district shall be a body corporate under the name provided in this act, and may sue and be sued in its name, may acquire and take property, both real and personal, for educational purposes within or without its corporate limits, by purchase, gift, grant, devise or bequest, and hold and use the same for such purposes, and may sell and convey the same as the interests of such district may require, subject to the conditions of this act." MCLA 340.352; MSA 15.3352.

"Sec. 113. The board of any school district of the third class hereunder shall have the powers and duties; (a) To locate, acquire, purchase or lease in the name of the district such site or sites within or without the district for schoolhouses, libraries, administration buildings, agricultural farms, athletic fields and playgrounds, as may be necessary; to purchase, lease, acquire, erect, or build and equip such buildings for school or library or administration or for use in connection with agricultural farms, athletic fields and playgrounds, as may be necessary; *to pay for the same out of the funds of the district provided for that purpose."* MCLA 340.113; MSA 15.3113.

"The board of any school district, except a school district of the first or second class, which desires to commence the construction of any new school building or addition to any existing school building, shall obtain competitive bids before such construction be commenced on all the material and labor required for the complete construction of the proposed new building or addition to any existing school building." MCLA 340.370; MSA 15.3370.

"Any school district, by a majority vote of the registered school tax electors voting on the question at an annual or special election called for that purpose, may borrow money and issue bonds of the district to defray all or any part of the cost of purchasing, erecting, completing, remodeling, improving, furnishing, refurnishing, equipping or re-equipping school buildings, structures, athletic fields, playgrounds, or other facilities, or any parts thereof or additions thereto; * * * " MCLA 340.681; MSA 15.3681.

Acting as a "body corporate", the defendant

school district acquired in its own name a site for the improvements here involved. By a majority vote of its registered school tax electors, the district issued its bonds to defray construction and equipment costs. The district obtained competitive bids and construction was completed some three years ago. None of the steps taken arose through state action, nor did the state obligate itself in any way to pay for the same.

We are persuaded that a strict construction of the statute is mandated since it is in derogation of the common law and because of its penal provisions. The statute does not disclose affirmatively that it was the legislative intent that "school districts" were included within its provisions. The use of the term "school districts" could easily have been made a part of the statute had such been the intent. The contrary intent is demonstrated through deletion of the words "or political subdivision thereof" before final enactment. Members of the Legislature expressed fears that the use of the latter term might be so construed as to "get down into local areas and down to the boards of education". It seems clear that the Legislature had some purpose in mind when the words were stricken and was not indulging in the doing of a meaningless thing. We find this purpose was to insure that school districts would not be included within the provisions of the statute. We are bolstered in this finding by a belief that the Legislature was well aware that by its prior enactments school districts had been defined as "political subdivisions". It is further significant that although throughout our judicial decisions, the term "state agencies" has been repeatedly used in referring to school districts, that such term was not used in the statute when defining "contracting agent".

Neither are we able to find that the defendant was engaged in "a state project" in its construction endeavors. It acquired a construction site in its own name. It determined to build upon such site. Its electors determined to borrow money and become obligated to the issuance of bonds and to raise local taxes for the purpose of discharging this obligation. It advertised for bids and proceeded to award contracts in its own name. It attempted in no way to obligate the state nor did the state become obligated. No state funds were used in the construction here involved. The district was not authorized to enter into any contract on behalf of the state but was only authorized to obligate itself. Finally, a strict construction of the statute requires that before the district could become a "contracting agent" within the meaning of the statute, the state must have "supported in whole or in part by state funds" the project itself. Since only local funds were used, no such support was furnished by the state.

Having concluded that the defendant herein was not a "contracting agent" and did not engage in a "state project" within the meaning of the statute, we find it unnecessary to reach the constitutional question here raised.

We affirm. Since a public question is involved, we assess no costs.