WESTERN MICHIGAN UNIVERSITY BOARD OF CONTROL v
STATE OF MICHIGAN

Docket Nos. 104340, 104341. Argued April 10, 1997 (Calendar No. 4).
Decided July 29, 1997.

The Western Michigan University Board of Control brought an action
in the Kalamazoo Circuit Court against the State of Michigan, seek-
ing a declaration that its student recreational facility project is not
subject to the prevailing wage act, MCL 408.551 *et seq.*; MSA
17.256(1) *et seq.* The court, Donald M. Goodwillie, J., granted sum-
mary disposition for the plaintiff, holding that because the project
had not been sponsored or financed by the state, it was not subject
to the act. The Court of Appeals, DOCTOROFF, C.J., and D. E.
HOLBROOK, JR., and CORRIGAN, JJ., affirmed (Docket Nos. 164452,
166312). The defendant appeals.

In an opinion by Chief Justice MALLETT, joined by Justices
BRICKLEY, CAVANAGH, BOYLE, and KELLY, the Supreme Court *held*:

Western Michigan University's student recreational facilities proj-
ect is subject to the prevailing wage act. The university is an arm of
state government; its project was sponsored and financed by the
state within the plain meaning of the act.

The prevailing wage act serves to protect employees of govern-
ment contractors from substandard wages by requiring payment of
prevailing wages and fringe benefits to workers on qualifying
projects. Whether a particular project is subject to the act is gov-
erned by the language of the act. It must be with a contracting
agent, be entered into after advertisement or invitation to bid, be a
state project, require the employment of construction mechanics,
and be sponsored or financed in whole or in part by the state. In
this case, the contracts at issue were entered into pursuant to an
initiation to bid, the project required the employment of construc-
tion mechanics, the university clearly is a contracting agent within
the meaning of the act, and, consequently, the student recreational
facilities project also clearly is a state project within the plain
meaning of the act. Further, because Western Michigan University
is a part of state government and its funds are state funds, the stu-
dent recreational facility project is sponsored and financed by the
state within the plain meaning of the prevailing wage act.

Reversed.

Justice RILEY, joined by Justice WEAVER, dissenting, stated that a project is sponsored or financed by the state when it was either financed by the state, i.e., the state made money available for a capital outlay or debt service, or sponsored by the state, i.e., the state became a surety for the project. In this case, the State of Michigan did not finance or sponsor the university's project to expand the student recreational facility because the university did not use state funds for the project and the state did not act as a surety to indemnify the debt the university incurred on the project. Consequently, the prevailing wage act does not apply. The trial court properly entered judgment on behalf of the university by so ruling.

212 Mich App 22; 536 NW2d 609 (1995) reversed.

*Bowie v Coloma School Bd*, 58 Mich App 233; 227 NW2d 298 (1975), overruled in part.

*Muskegon Bldg & Construction Trades v Muskegon Area Intermediate School Dist*, 130 Mich App 420; 343 NW2d 579 (1983), overruled in part.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Don M. Schmidt* and *Charles E. Ritter*), for the plaintiff-appellee.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Kelly Keenan*, Assistant Deputy Attorney General, for defendant-appellant State of Michigan.

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *John R. Canzano*), for defendant-appellant intervenor Michigan State Building and Construction Trades Council.

Amicus Curiae:

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Peter J. Kok* and *Timothy J. Ryan*), for the Associated Builders & Contractors, Inc.

MALLETT, C.J. Michigan's prevailing wage act, MCL 408.551 *et seq.*; MSA 17.256(1) *et seq.*, requires that certain contracts for state projects contain a provision obligating the contractor to pay workers on the project the wage rate and fringe benefits prevailing in the locality where the construction is to occur. We granted leave in this case to determine whether Western Michigan University's student recreational facility project is subject to the act. The trial court and Court of Appeals determined that because state appropriations did not directly finance or guaranty financing for the project, the project was not "sponsored or financed in whole or in part by the state"[1] within the meaning of the act and that, consequently, the project was not subject to it. We disagree. Because Western Michigan University is essentially an arm of state government, its project was sponsored and financed by the state within the plain meaning of the act.

I

FACTS

Western Michigan University began planning renovation of its student recreational facilities in the mid-1980s. It entered into various contracts for the planning and work on the project during the 1980s and early 1990s. Before the Board of Control of the university finalized the financing of the project, bills relating to the various contracts were paid out of the university's general fund, which contained commingled state appropriations. In the spring of 1991, the board adopted an enrollment fee increase to fund the project. In December of 1992, after realizing that

---

[1] MCL 408.552;  MSA 17.256(2).

funds generated from the enrollment fee would not completely cover the cost, the university issued approximately $60 million in revenue bonds. The bonds were to be primarily repaid with revenues from student activity fees. The university additionally pledged certain general fund revenues. These revenues included tuition fees, deposits, charges and receipts, income from students, gross revenues from housing, dining and auxiliary facilities, and grants, gifts, donations, and pledges, as well as investment income.

The university sent an inquiry to the Department of Labor regarding whether it must pay construction workers on the project at the prevailing wage act rate. The parties dispute whether the department informed the university that the act did not apply. The university claims that the department indicated that the act did not apply to the project because it was not funded by direct state appropriations. The state claims that correspondence from the department related to other projects, and not to the recreational facility project at issue here.

In light of controversy surrounding the applicability of the prevailing wage act to the project, state representative Mary Brown requested a formal opinion from the Attorney General on the issue. The Attorney General determined that the act does apply generally to construction projects undertaken by state universities, and specifically applies to the student recreational facilities projects. OAG, 1991-1992, No 6,723, pp 156-160 (June 23, 1992).

Immediately following release of the Attorney General opinion, the university commenced this declaratory judgment action. The trial court granted sum-

mary disposition for the university and the intervenor plaintiff, Associated Builders & Contractors, Inc., holding that because the project had not been "sponsored or financed" by the state, it was not subject to the act. The state, and the intervenor defendant Michigan State Building Trades and Construction Council, AFL-CIO, appealed. The Court of Appeals affirmed. 212 Mich App 22; 536 NW2d 609 (1995). The defendant and the intervenor defendant sought leave to appeal in this Court and now we reverse.

II

PREVAILING WAGE ACT

Michigan's prevailing wage act is generally patterned after the federal prevailing wage act, also known as the Davis-Bacon Act. 40 USC 276a *et seq.* Both the federal and Michigan acts serve to protect employees of government contractors from substandard wages. Federal courts have explained the public policy underlying the federal act as

> "protect[ing] local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area" . . . [and] "giv[ing] local labor and the local contractor a fair opportunity to participate in this building program." [*Universities Research Ass'n, Inc v Coutu*, 450 US 754, 773-774; 101 S Ct 1451; 67 L Ed 2d 662 (1981).]

> The purposes of the Davis-Bacon Act are to protect the employees of Government contractors from substandard wages and to promote the hiring of local labor rather than cheap labor from distant sources. [*North Georgia Bldg & Construction Trades Council v Goldschmidt*, 621 F2d 697, 702 (CA 5, 1980).]

The Michigan prevailing wage act reflects these same public policy concerns. Through its exercise of the sovereign police power to regulate the terms and conditions of employment for the welfare of Michigan workers,[2] the Michigan Legislature has required that certain contracts for state projects must contain a provision requiring the contractor to pay the prevailing wages and fringe benefits to workers on qualifying projects.

Whether a particular project comes within the ambit of the act is governed by the language of the act itself. In this regard, the act provides:

> Every contract executed between a *contracting agent* and a successful bidder as contractor and entered into pursuant to *advertisement and invitation to bid* for a *state project* which requires or involves the employment of *construction mechanics*, other than those subject to the jurisdiction of the state civil service commission, and which is *sponsored or financed in whole or in part by the state* shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed. [MCL 408.552; MSA 17.256(2) (emphasis added).]

In summary, to come within the act, a project must: (1) be with a "contracting agent," a term expressly defined in the act; (2) be entered into after advertisement or invitation to bid; (3) be a state project, a term also defined in the act; (4) require the employment of construction mechanics; and (5) be sponsored or financed in whole or in part by the state.

---

[2] See Const 1963, art 4, § 49; *West Ottawa Public Schools v Director, Dep't of Labor*, 107 Mich App 237, 244; 309 NW2d 220 (1981).

The parties do not dispute that the contracts at issue were entered into pursuant to an invitation to bid or that the project required the employment of construction mechanics. Consequently, we will not further discuss these two threshold requirements.

The requirement that the project be with a "contracting agent" is explained in the act's definition of the term "contracting agent":

> "Contracting agent" means any officer, school board, board or commission of the state, or a state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or to perform a state project by the direct employment of labor. [MCL 408.551(c);  MSA 17.256(1)(c).]

The university is clearly a contracting agent within the plain meaning of the act. The constitutional provisions relating to state universities deems the university an "institution" and establishes state support:

> The legislature shall appropriate moneys to maintain . . . Western Michigan University . . . by whatever names such institutions may hereafter be known, and other institutions of higher education established by law. [Const 1963, art 8, § 4.]

Further, the regional universities act, MCL 390.551; MSA 15.1120(1),  refers to the university as a "state institution":

> The established state institutions known as Central Michigan university, Eastern Michigan university, Northern Michigan university and Western Michigan university are continued under these names. Each institution shall be governed by a separate 8-member board of control.

Having determined that the university is a "contracting agent," we next turn to whether the student recreational facilities project it undertook is a "state project." The act also expressly defines this term:

> "State project" means new construction, alteration, repair, installation, painting, decorating, completion, demolition, conditioning, reconditioning, or improvement of public buildings, schools, works, bridges, highways, or roads authorized by a contracting agent. [MCL 408.551(b); MSA 17.256(1)(b).]

The parties do not dispute that the project undertaken by the contracting agent, Western Michigan University, involved renovations and an addition to the existing student recreation center. Consequently, it clearly is a "state project" within the plain meaning of the act.

The critical issue in this appeal is whether the project satisfies the final threshold requirement. To come within the act, the project must be "sponsored or financed in whole or in part by the state." This phrase is not defined in the act. The Attorney General concluded that the project met this final criterion, while the trial court and the Court of Appeals determined that it did not.

III

SPONSORED OR FINANCED BY THE STATE

In construing the terms of a statute, this Court has often stated that we must give effect to the Legislature's intent. When statutory language is clear and unambiguous, we must honor the legislative intent as clearly indicated in that language. No further construction is required or permitted. *Tryc v Michigan*

*Veterans' Facility,* 451 Mich 129, 135; 545 NW2d 642 (1996). Further, where a statute does not define a term, we will ascribe its plain and ordinary meaning. *Id.* at 135-136; *Shelby Twp v Dep't of Social Services,* 143 Mich App 294, 300; 372 NW2d 533 (1985).

We find no ambiguity in the prevailing wage act's threshold requirement that a project must be "sponsored or financed in whole or in part by the state." No construction of these terms is required. If the "state," including any part of state government, helps to finance a project, or undertakes some responsibility for a project, this criterion is met. Because we agree with the analysis of the Attorney General regarding whether the state has sponsored or financed a project in whole or in part, specifically regarding the university's project at issue in this case, we will set forth that analysis here:

> Direct legislative appropriation of funds is not . . . the only means by which a project can be sponsored or financed by the state. In *West Ottawa Public Schools v Director, Dep't of Labor,* 107 Mich App 237; 309 NW2d 220 (1981), lv den 413 Mich 917 (1982), for example, the state did not directly appropriate any funds for the project in question but did act as a surety for the payment of bonds issued to finance the project. The Court held that this was sufficient to constitute "sponsorship" within the meaning of the prevailing wage act. In reaching this conclusion, the Court defined "sponsor" as "one who assumes responsibility for some other person or thing." 107 Mich App 247-248.
>
> The board of control of a state university assumes responsibility for any construction project undertaken by the university and the university, thus, is the "sponsor" of the project. State universities are clearly a part of state government in Michigan. *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96, 108; 204 NW2d 218 (1973); *Branum v Bd of Regents of University*

*of Michigan,* 5 Mich App 134, 138-139; 145 NW2d 860 (1966).[2]

---

[2]It is noted that several cases have reached a contrary result with respect to local school districts. See, e.g., *Bowie v Coloma School Bd,* 58 Mich App 233; 227 NW2d 298 (1975), and *Muskegon Bldg & Constr Trades v Muskegon Area Intermediate School Dist,* 130 Mich App 420; 343 NW2d 579 (1983), lv den 419 Mich 916 (1984). These cases are clearly distinguishable, however, since school districts have been characterized as municipal corporations and are not part of state government. See, e.g., *Bowie, supra,* 58 Mich App 239; state universities, in contrast, are institutions of state government. *Regents of the University of Michigan, supra; Branum, supra.*

---

[OAG, *supra* at 158.]

We fully agree with this analysis. Western Michigan University is "the state" within the meaning of the prevailing wage act. This Court has fully and consistently articulated the nature of state institutions of higher learning, such as the University of Michigan and Western Michigan University. In *Auditor General v Regents of Univ of Michigan,* 83 Mich 467; 47 NW 440 (1890), this Court found that the state universities are organically part of the state government and found that all university property is state property held in trust for the public purpose of the university.

While we recognize that state universities must exercise a fair amount of independence and control over their day-to-day operations and the use of state university funds in furtherance of their educational purposes, this does not diminish their essential character as a part of the state. As explained by the Court of Appeals, in a case involving the application of governmental immunity to the University of Michigan:

In spite of its independence, the board of regents remains a part of the government of the State of Michigan.

\*    \*    \*

It is the opinion of this Court that the legislature can validly exercise its police power for the welfare of the people of this State, and a constitutional corporation such as the board of regents of the University of Michigan can lawfully be affected thereby. The University of Michigan is an independent branch of the government of the State of Michigan, but it is not an island. Within the confines of the operation and allocation of funds of the University, it is supreme. Without these confines, however, there is no reason to allow the regents to use their independence to thwart the clearly established public policy of the people of Michigan. [*Branum v Bd of Regents of Univ of Michigan, supra* at 138-139.]

In summary, we hold that because Western Michigan University is a part of state government and its funds are state funds, the student recreational facility project is sponsored and financed by the state within the plain meaning of the prevailing wage act. Further, because the project meets all the other threshold criteria for the act's application, the university must comply with the act's wage and benefit requirements.

We are mindful that our determination regarding whether the project was sponsored or financed by the state contravenes the trial court and the Court of Appeals conclusions and does not comport with the Department of Labor's longstanding policy in construing the act. Our position is somewhat reminiscent of the boy who pointed out that the emperor has no clothes. Consequently, we feel compelled to explore and explain why the arguments relied on by the lower courts are in error.

The primary, and most alluring, of these arguments has a certain technical appeal. This argument is set forth in the following excerpt from the Court of Appeals opinion:

> [A]cceptance of the [state's] interpretation would render
> meaningless the statutory requirement that the state project
> be "sponsored or financed in whole or in part by the state."
>
> . . . When construing a statute, the court should pre-
> sume that every word has some meaning and should avoid
> any construction that would render the statute, or any part
> of it, surplusage or nugatory. *Altman v Meridian Twp*, 439
> Mich 623, 635; 487 NW2d 155 (1992). If possible, effect
> should be given to each provision. *Gebhardt v O'Rourke*,
> 444 Mich 535, 542; 510 NW2d 900 (1994). The Attorney
> General would deem all state projects to be sponsored by
> the state. This would render surplusage the requirement
> that a project be "sponsored or financed in whole or in part
> by the state." Because we find this issue to be dispositive,
> we need not address whether WMU is a "contracting agent"
> or whether this is a "state project" as defined by the act.
> [212 Mich App 26-27 (citation omitted).]

We first note that the rule of construction that stat-
utes should be interpreted to give effect to every term
is not needed here, where the statutory language is
clear. Even so, the rule is misapplied. Holding that a
project undertaken and financed by the university, an
arm of state government, is necessarily "sponsored
and financed in whole or in part by the state" does
not equate with finding that every state project comes
within the act. Neither does such a holding render the
"sponsored and financed" criterion surplusage.

There are "contracting agents" that are not a part of
state government, in contrast to the university here,
whose projects may or may not be "sponsored or
financed in whole or in part by the state." If a "con-
tracting agent" is a part of state government, for
example a state agency or department, or a state
institution like Western Michigan University, all its
projects will necessarily be sponsored or financed by
the state. If those projects meet the other threshold

criteria discussed earlier in part II, they will come within the act. In contrast, for projects undertaken by contracting agents that are not part of state government, for example, a local school board, the "sponsored or financed . . . by the state" criterion will require closer examination and must be determined case by case. The existence of these nonstate contracting agents ensures that the "sponsored or financed" language is not mere surplusage.

Because the act does not limit how a contracting agent may satisfy the "sponsored or financed . . . by the state" criterion, we also refuse to do so. Contracting agents that are an integral part of state government satisfy the requirement by their very nature. Contracting agents that are outside state government can satisfy the requirement in a number of ways, including, but not necessarily limited to, direct legislative appropriation of funds and having the state act as surety for payment of bonds issued to finance the project.

Other arguments that the trial court relied on also stem from an erroneous application of rules of statutory construction. The first is the rule that we must give deference to an agency's construction of the act that it is charged to administer. *Davis v River Rouge Bd of Ed*, 406 Mich 486, 490; 280 NW2d 453 (1979). The trial court, following this rule, cited the Department of Labor's Policy and Procedure Manual definitions of "financed" and "sponsored" and then accepted these definitions.[3] Apparently reluctant to

---

[3] The Department of Labor's manual contains the following definitions:

Financed in whole or in part by the state—means providing or making state monies available for capital outlay or debt service.

contravene the department's longstanding policy, the trial court found that because the university did not seek direct appropriations and because the state did not act as surety for repayment of the bonds, the project was outside the act's scope.

As we have already noted, no construction is needed where the language of the statute is clear and can be given its plain and ordinary meaning. Consequently, we would not reach this rule of construction.

Further, while an agency's construction generally deserves deference, it is not controlling and cannot be used to overcome the statute's plain meaning. *Id.*; *Ludington Service Corp v Acting Ins Comm'r*, 444 Mich 481, 505; 511 NW2d 661 (1994). The extremely limited and artificial definition that the department places on the "sponsored or financed" language simply has no basis in the act. The act does not require direct legislative appropriations of state monies as a threshold criterion. Nor does it limit its definition of "sponsorship" to instances where the state acts as surety. We refuse to so artificially limit the clear terms of the act and instead ascribe the commonly understood definitions of these terms, as explained earlier in this opinion.

The other rule of construction that the trial court erroneously applied is the rule of strict construction. Because the prevailing wage act is in derogation of the common law, and because it contains a misdemeanor criminal penalty provision, the trial court, following previous Court of Appeals opinions, found

Sponsored by the state—means that the state acts as a surety by assuming the financial responsibilities for an authorized contracting agent.

that its terms must be strictly construed against its application.[4] The rule of strict construction should not apply to application of the prevailing wage act in this context. As noted by the Court of Appeals in determining whether another act, the Pesticide Control Act, MCL 286.551; MSA 12.340(1), should be strictly construed:

> The general rule that criminal statutes are to be strictly construed is inapplicable when the general purpose of the Legislature is manifest and is subserved by giving the words used in the statute their ordinary meaning. *United States v P Koenig Coal Co*, 270 US 512, 520; 46 S Ct 392, 394; 70 L Ed 709, 713 (1926). [*People v Jackson*, 176 Mich App 620, 628; 440 NW2d 39 (1989).]

As previously noted, the Michigan act, like the federal Davis-Bacon Act, implements public policy beneficial to businesses and their workers on government construction projects by providing for a certain minimum wage rate and benefit level. The primary purpose of the act is remedial, rather than criminal, in nature. "A remedial statute is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." *In re School Dist No 6, Paris & Wyoming Twps*, 284 Mich 132, 144; 278 NW 792 (1938).

The mere inclusion of a misdemeanor penalty provision does not render the act a criminal statute that must be strictly construed. Similar to the prevailing wage act, the Minimum Wage Law, MCL 408.381 *et seq.*; MSA 17.255(1) *et seq.*, and the Worker's Disability Compensation Act, MCL 418.101 *et seq.*; MSA

---

[4] *Bowie, supra* at 241; *Muskegon Bldg & Construction Trades, supra* at 437.

17.237(101) *et seq.*, also regulate the terms and conditions of employment. These acts also are in derogation of the common law and contain misdemeanor penalty provisions. MCL 408.396; MSA 17.225(16), MCL 418.125; MSA 17.237(125). However, neither of these acts has been construed as a criminal statute, nor has its terms generally been strictly construed. See *Gross v Great Atlantic & Pacific Tea Co*, 87 Mich App 448; 274 NW2d 817 (1978); *Rice v Michigan Sugar Co*, 83 Mich App 508; 269 NW2d 202 (1978). Further, even if we were to find that the prevailing wage act was generally a criminal statute, we would construe its remedial provisions, including the threshold criteria for its applicability, liberally.

> Remedial statutes, and the remedial portions of penal statutes, are to be liberally construed. See, e.g., *Robinson v Harmon*, 157 Mich 272, 278; 122 NW 106 (1909); *Rancour v The Detroit Edison Co*, 150 Mich App 276, 285; 388 NW2d 336 (1986), lv den 428 Mich 860 (1987); *Pi-Con, Inc v A J Anderson Construction Co*, 169 Mich App 389, 395; 425 NW2d 563 (1988). [*Jackson, supra* at 628, n 3.]

To the extent that previous decisions of the Court of Appeals have indicated that the rule of strict construction should apply when determining the applicability of the prevailing wage act, those portions of those decisions are overruled. See *Bowie, supra* at 241; *Muskegon Bldg & Construction Trades, supra* at 437.

IV

CONCLUSION

For the above reasons, we hold that Western Michigan University's student recreational facilities project comes within the ambit of the prevailing wage act.

Because the university is a part of state government in its creation and operation, projects it undertakes are "sponsored or financed . . . by the state" within the meaning of the act regardless of whether there are other direct state appropriations or other state sponsorship and are subject to it when the other threshold criteria are met. We therefore reverse the decision of the Court of Appeals.

BRICKLEY, CAVANAGH, BOYLE, and KELLY, JJ., concurred with MALLETT, C.J.

RILEY, J. (*dissenting*). Because I disagree with the majority's conclusion that Western Michigan University's project to build a recreational facility is subject to the prevailing wage act, I respectfully dissent. I believe that the majority has given a strained interpretation of the meaning of "sponsored or financed in whole or in part by the state" in the act that is not supported by the plain meaning of the statute, is contradicted by the statute itself, and renders nugatory part of the provisions where the building agent is a state institution. I would adopt the long-held interpretation of the agency responsible for administering this act, the Department of Labor, and hold that a project is sponsored or financed by the state when it was either (1) financed by the state, i.e., where the state made money available for a capital outlay or debt service, or (2) sponsored by the state, i.e., where the state became a surety for the project. In the instant case, the State of Michigan did not finance or sponsor the university's project to expand the student recreational facility because the university did not use state funds for the project and the state did not act as a surety to indemnify the debt the university incurred

on the project. Consequently, I would conclude that the prevailing wage act does not apply. The trial court properly entered judgment on behalf of the university by ruling that the act did not apply. I would affirm the Court of Appeals decision upholding the trial court's grant of summary disposition in favor of the university.

ANALYSIS

I. PREVAILING WAGE ACT

The prevailing wage act, MCL 408.551 *et seq.*; MSA 17.256(1) *et seq.*, requires that certain contracts for state projects must contain a provision that requires the contractor to pay wages and fringe benefits to construction employees at the prevailing wage in the locality where the construction is to occur. Section 2 of the prevailing wage act contains the primary mandate:

> Every contract executed between a *contracting agent* and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a *state project* which requires or involves the employment of construction mechanics, other than those subject to the jurisdiction of the state civil service commission, *and which is sponsored or financed in whole or in part by the state* shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed. [MCL 408.552; MSA 17.256(2) (emphasis added).]

I agree with the majority that this provision thereby requires a governmental employer to pay the prevailing wage if a project meets the following five condi-

tions: the project must (1) be with a "contracting agent" as defined by the act, (2) be entered into pursuant to an advertisement and invitation to bid, (3) be a "state project" as defined by the act, (4) involve the employment of construction mechanics, and (5) be "sponsored or financed in whole or part by the state." See *ante*, p 536.

## II. MAJORITY'S INTERPRETATION OF THE ACT AND THE PROPER INTERPRETATION

The only issue on appeal is whether the project to build a recreational facility initiated by Western Michigan University was "sponsored or financed in whole or in part by the state." The majority asserts that the statute unambiguously provides that this project was sponsored and financed by the state because "Western Michigan University is 'the state' " for purposes of the act. See *ante*, p 540. I do not believe that this conclusion is required by the plain meaning of the act.

In fact, the majority's interpretation of the word "state" in the phrase "sponsored or financed in whole or in part by the state" is contradicted by the statute's usage of the word "state" in the very same statute in its third element. The majority concludes that the term "state" in this phrase unambiguously includes state universities like Western Michigan, but also unambiguously excludes local school boards. See *id.*, pp 542-543.[1] In contrast, in requiring that a project subject to the prevailing wage act be a "state project,"

---

[1] The majority reasons as follows:

> [W]e hold that because Western Michigan University is a part of state government and its funds are state funds, the student recreational facility project is sponsored and financed by the state within the plain meaning of the prevailing wage act. [*Ante*, p 541.]

the statute clearly provides that an improvement by a local school board is a *"state* project."

A "state project" is defined by the act as a "new construction, alteration, repair, installation, painting, decorating, completion, demolition, conditioning, reconditioning, or improvement of public buildings, schools, works, bridges, highways, or roads authorized *by a contracting agent."* MCL 408.551(b); MSA 17.256(1)(b) (emphasis added). The statute defines a "contracting agent" as "any officer, *school board,* board or commission of the state, or a state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or to perform a state project by the direct employment of labor." MCL 408.551(c); MSA 17.256(1)(c) (emphasis added). Thus, there can be no dispute that, according to the statute, a local school board may begin a "state project." The majority's interpretation, however, creates an inconsistency in the statute: a project by a local school board may be a *"state* project" under the statute's third element, but, at the same time, a local school board is not part of the "state" for the purposes of the fifth element. See *ante,* pp 541-543. This contradiction manifests the fallacy of the majority's claim that it is expounding on the unambiguous, plain meaning of the word "state."

The analysis is flawed for a second reason. The majority's novel interpretation of the statute renders superfluous the first of the five elements, i.e., that the

---

[F]or projects undertaken by contracting agents that are not part of state government, for example, a local school board, the "sponsored or financed . . . by the state" criterion will require closer examination and must be determined case by case. [Id., p 543 (emphasis added).]

project be with a "contracting agent," where the con-
tracting agent is a state institution. The statute pro-
vides that a state institution that is supported by state
funds like Western Michigan University is a "con-
tracting agent" under the act.[2] The university con-
cedes on appeal the point that Western Michigan Uni-
versity is a contracting agent. Where an employer like
Western Michigan University meets the statute's first
element of the test (involve a "contracting agent")
because it is a state institution, it will then, according
to the majority's interpretation, always meet the fifth
element that the project be "sponsored or financed
. . . by the state" because Western Michigan Univer-
sity is the state.

The majority attempts to address this claim that its
interpretation renders part of the statute to be mere
"surplusage" as the Court of Appeals concluded, see
212 Mich App 22, 26; 536 NW2d 609 (1995), by noting
that there are other entities defined by the act as
"contracting agent[s]" that are not part of the state for
whom the fifth element would be relevant. See *ante,*
pp 542-543. Nevertheless, the statute's fifth require-
ment would still be redundant for "state" contracting
agents (as interpreted by the majority). The rules of
statutory construction require that this Court read
separate provisions of a statute consistently as a
whole to ensure that each provision is given effect.
*Gebhardt v O'Rourke,* 444 Mich 535, 542; 510 NW2d
900 (1994). By analogy, this Court should interpret a
statute to ensure that an interpretation of one provi-
sion does not render another superfluous in a sub-

---

[2] The fact that Western Michigan University is a "state institution" is, in
my opinion, a good example of a point that is unambiguous.

stantial number of cases. The Legislature likely did not intend to create such a cumbersome, awkward statute.

The majority's error is rooted in its mistaken belief that the word "state" is unambiguous in the phrase "sponsored or financed in whole or in part by the state." In my opinion, the word "state" may be construed narrowly to include only the three branches of state government (executive, legislative, and judiciary) and the agencies they operate. Or, the "state" may be construed broadly to include the three branches of state government and their agencies as well as all municipalities and institutions that are created by the state. Traditionally, cities, like state universities and colleges, are considered municipal corporations and creatures of the state. *Sinas v City of Lansing*, 382 Mich 407, 411; 170 NW2d 23 (1969). The word "state" in the fifth element may also plausibly be interpreted, as advanced by the majority, to include all state governmental agencies, and state institutions, like state universities and state mental health facilities, but not smaller units of government created by the state. This Court should examine the purpose of this fifth element and examine it in the context of the earlier provisions to discern its meaning here.

The focus of the fifth element is on whether the project is "*sponsored* or *financed*" by the state government, not on whether the agency or institution initiating the project is a governmental entity. The statute ensures the latter point in its first element, by guaranteeing that the project is with a "contracting agent." Every entity listed in the definition of contracting agent could be loosely described as a state

actor. In focusing on whether the project is financed or sponsored by the state, the statute's fifth element appears to ensure that either the Legislature has authorized funds for the project or there has been a state action by one of the three branches of government to sponsor the project. The act, however, provides no definition of the terms "sponsor" or "finance."

The Department of Labor has defined these terms for its administrative use in its policy and procedural manual from 1992 as follows:

> Financed in whole or in part by the state—means providing or making state monies available for capital outlay or debt service.
>
> *     *     *
>
> Sponsored by the state—means that the state acts as a surety by assuming the financial responsibilities for an authorized contracting agent.

The Department of Labor apparently applied this interpretation to at least six state university or college projects from 1987 through 1991, where it concluded that the prevailing wage act did not apply to the school projects because the state universities and colleges used bond issues to fund the projects and did not use state funds.[3] This Court generally grants

---

[3] For example, in July 1987, the Department of Labor sent the following letter with regard to a project by Ferris State College:

"This project for which you have claimed an underpayment of the prevailing wage act is not a state prevailing wage project. Ferris State College financed this building project with its own bond issue, which is not guaranteed by the State. This method of financing . . . is outside the jurisdiction of the Department of Labor."

deference to a longstanding agency interpretation of a statute that the agency administers. See *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 580; 548 NW2d 900 (1996). Because the agency's interpretation is a plausible one and fits the purposes of the statute and its fifth requirement examined in context, I would defer to this administrative agency and conclude that, in order for a project to come under the prevailing wage act, the state must either finance the project by providing state monies or sponsor the project by assuming financial responsibility for it.

### III. APPLICATION OF THE PROPER INTERPRETATION

Under this interpretation, the trial court properly concluded that the project was not financed or sponsored by the State of Michigan.

In April 1992, the university began construction on the project. In December 1992, the university issued $59,495,000 in tax-exempt bonds to pay for the project. Between the start of the project and the sale of the bonds, the university internally borrowed with interest from its general fund to cover the cost of the project's progress. The university did not receive capital appropriations from the state for the project. During the time the university drew from its general fund, the cash reserves in the general fund ranged from approximately $22,000,000 to $38,000,000, and the amount the university drew from the general fund as a temporary cash flow on a monthly basis ranged from $95,000 to $7,100,000. After the bonds were sold, the general fund was reimbursed with interest from the bond proceeds. The university intends to repay the revenue bonds with money raised through student activity fees and from its nonstate general fund that

includes tuition, other fees, grants, and gifts. The Legislature approved the project with the understanding that it would not involve state funds.[4] The state was not a party to any of the contracts for the project, is not obligated to pay on the revenue bonds, and is not acting as surety on the bonds.

According to the undisputed facts, the State of Michigan did not specifically appropriate funds for the project. Where the university drew from its general fund for the project, it reimbursed the funds it obtained, and this fund, at all times, contained sufficient cash reserves from nonstate sources to cover the costs of the project. The trial court persuasively addressed the point regarding whether the university actually used state or nonstate funds for the project when it drew from its general fund:

> [I]t would be unrealistic to require WMU to chase dollars through its general account to determine whether they were state or non-state funds, for this would be an impossible task. Thus, the court finds that so long as there were sufficient non-state funds in the general account to cover the dollars paid out for the Project, there was no state financing or sponsorship.

Moreover, the State of Michigan did not become a surety on the project and was not financially responsible for the debt the university incurred.

---

[4] On March 5, 1992, the Director of the Department of Management and Budget, Patricia Woodworth, sent a letter to the Joint Capital Outlay Subcommittee indicating her support for the project because "it does not require state funding and with the understanding that there is no commitment of state funds for operation and maintenance." The committee unanimously supported the project with the understanding that "there is no commitment of state funds for operation and maintenance."

Because the Court of Appeals properly affirmed the trial court's decision to grant summary disposition in favor of Western Michigan University, I would affirm.

WEAVER, J., concurred with RILEY, J.